Opinion
 

 PARRILLI, J.
 

 In this case we must decide whether a lawyer can be ordered to pay an opposing party $50,000 in counsel fees and costs under California Rules of Court, rule 227, as a sanction for causing a mistrial.
 
 [1]
 
 Rule 227 provides that a court “may order the person at fault” for failure to comply with a court order “to pay the opposing party’s reasonable expenses and counsel fees ... in addition to any other sanction permitted by law.” We recognize the rule was intended to consolidate existing statutory authority. However, the plain terms of rule 227 purport to confer on trial courts a broad sanctioning power inconsistent with the more limited judicial authority to impose sanctions provided by the Legislature. (Code Civ. Proc.,
 
 *355
 
 §§ 128.5, 128.7, 177.5, 1218.)
 
 [2]
 
 We conclude rule 227 is invalid to the extent it fails to conform with the statutory conditions for an award of attorney’s fees as sanctions. The sanctions order before us does not meet the conditions of any statute, and therefore must be reversed.
 

 Background
 

 1.
 
 Pretrial Proceedings
 

 Appellant Donald A. Jelinek represented Firmaterr, Inc., and Firmaterr’s sole owner, Jerry A. Sulliger (collectively, Firmaterr) in defending an unlawful detainer action brought by Firmaterr’s landlords, Trans-Action Commercial Investors, Ltd. and Trans-Action Commercial Mortgage Investors, Ltd. (collectively, Trans-Action). Firmaterr operated the Shattuck Hotel, a large, historic structure in downtown Berkeley with 175 rooms or suites available to guests, as well as restaurant, bar, and banquet facilities. Firmaterr’s lease with Trans-Action called for a base rent of $2,000 per month plus percentages of gross receipts from room rentals (25 percent of the amount above $168,000 per year), alcoholic beverage sales (8 percent), and sales of food (3 percent). Trans-Action’s amended complaint alleged Firmaterr had violated a lease provision requiring it to conduct the business “in such manner as shall cause the production of maximum gross receipts from room rentals and from the sale or service of food and beverages, consistent, however, with the reasonable judgment of lessee in that behalf.”
 

 Firmaterr’s answer denied any breach of the lease and asserted as affirmative defenses that Trans-Action had (1) violated the rule against splitting a cause of action; (2) come into court with unclean hands; (3) breached the implied covenant of good faith and fair dealing; and (4) waived the right to terminate the lease by accepting rent after service of a “notice to cure covenant or quit.” The law and motion department of the trial court partially granted Trans-Action’s motion for summary adjudication, barring all Firmaterr’s defenses except waiver. The parties agreed the trial judge would determine the validity of the waiver defense. Following a hearing, the judge ruled there was no waiver.
 

 After the summary adjudication ruling, Trans-Action filed 25 motions
 
 in limine,
 
 most of which were granted by the trial judge after a hearing. None of the
 
 in limine
 
 orders was formalized in writing, but the first, which bifurcated the trial, was memorialized in a minute order. Our disposition of this appeal makes it unnecessary to consider the
 
 in limine
 
 orders in detail,
 
 *356
 
 but to indicate the context of the sanctions at issue we briefly review the nature of the orders Jelinek was found to have violated.
 

 The bifurcation order limited the issues in the first phase of trial to whether Firmaterr had failed to operate a restaurant in the hotel, and if so the resulting damages. The judge later expanded the scope of the first phase issues by ruling that the jury would also determine whether any breach of the lease by Firmaterr was material. The other relevant
 
 in limine
 
 orders precluded evidence and argument relating to the following subjects: the stricken defenses of unclean hands and breach of the covenant of good faith and fair dealing (orders 3 and 4); prior litigation between the parties about whether Firmaterr had improperly allocated $12 of each room rental to a continental breakfast in order to reduce the amount of gross rental receipts (order 8); alleged threats of litigation by Trans-Action’s managing partner (order 9); Trans-Action’s bidding against Firmaterr for hotel furnishings at the bankruptcy auction of the estate of the Shattuck Hotel’s former operator, from whom Firmaterr had purchased the lease (order 10); newspaper articles about the closure of the hotel after the former operator declared bankruptcy (order 11); defendant Sulliger’s personal belief about the reasonableness of hotel operations (order 17); the reasonableness of not operating a restaurant (order 19); Firmaterr’s net income from restaurant operations (order 20); and reports by Trans-Action to its partners about hotel operations and the litigation with Firmaterr (order 21).
 

 The minute order further provided: “In the event that defendant contends that evidence of # 9 [threats of litigation] and # 21 [Trans-Action reports] (other than the report of the bankruptcy auction) is admissable [sz'c] on cross-examination to show bias of any witness, defendant shall first make an offer of proof outside the presence of the jury.”
 

 2.
 
 Proceedings at Trial
 

 During Jelinek’s opening statement, Trans-Action made numerous objections, many of which the judge sustained. After the jury was excused for the day, Trans-Action moved for a mistrial, contending Jelinek had engaged in “grossly improper argument. . . plainly disregarding the Court’s in limine orders.” Jelinek responded that his opening statement had been carefully crafted so as not to violate the
 
 in limine
 
 orders. He said he had “conferred with two lawyers to be absolutely certain that I would follow the Court’s admonition.” The judge disagreed with Jelinek’s view, stating: “Well, I think there were a series of violations. And kind of the disturbing part of it is when I began to warn you, you kept on doing the same thing.” The judge denied
 
 *357
 
 the motion for a mistrial without prejudice and agreed to give a curative statement to the jury. Trans-Action’s counsel suggested Jelinek should be sanctioned for wilful breach of the court’s orders. The judge told TransAction to provide him with authority on sanctions, which he would consider the next morning. Jelinek said he wanted an attorney to represent him at any hearing on sanctions, and could obtain counsel on short notice.
 

 The nature of the conflict between Jelinek and the judge was apparent at this early point in the trial, as the following exchange demonstrates:
 

 “The Court: . . . [T]he reason we spent all of this time on in limine motions is to narrow the issues. If we’re just going to bring up the stuff in the
 
 in limine
 
 motions there’s really no point in having in limine motions.
 

 “And furthermore, the same issue is going to come up during the trial. If attempts are made to get in all kinds of things which are kept out by in limine motions, it’s one more invitation to a mistrial—which is just more expense to your client and everybody else, and time and effort on the part of the jurors, the court and everybody else.
 

 “Mr. Jelinek: I think the problem, your Honor, is that you have in your wisdom kept out virtually everything in our case.
 

 “The Court: Well, you disagree with the in limine orders. I understand that.
 

 “Mr. Jelinek: I understand. Let me—
 

 “The Court: You made that clear. But that’s the way it works.
 

 “Mr. Jelinek: Let me elaborate, if I may.
 

 “The Court: You’re stuck with the rulings.
 

 “Mr. Jelinek: I understand that. And therefore we’ve—we carefully screened what we were going to say to see anything that you excluded explicitly I left out.”
 

 The next morning, after further argument about sanctions, the judge concluded: “Pursuant to Section 177.5 of the CCP the Court finds that certain of the statements made by Mr. Jelinek were contrary to the Court’s in
 
 *358
 
 limine motions and are sanctionable. And the Court will defer any determination on the disposition of the sanction order until conclusion of the trial.”
 
 [3]
 
 Jelinek was undaunted. The pattern of frequent objections by Trans-Action repeatedly sustained by the judge continued during the examination of witnesses. After the morning session of the first day’s testimony, TransAction again moved for a mistrial based on Jelinek’s “repeated violations of the Court’s in limine orders.” Jelinek again denied violating the
 
 in limine
 
 orders, and contended he was entitled to impeach witnesses on cross-examination by asking questions about their economic interest in the matters at issue. The judge told Jelinek to inform the court outside the presence of the jury if he wanted to cross-examine witnesses on matters subject to the
 
 in limine
 
 orders. The motion for a mistrial was denied.
 

 After the noon recess, the judge stated he had reviewed the
 
 in limine
 
 rulings and reaffirmed them, “not only on the grounds previously stated, but also on 352 grounds," in that “the potential prejudice to the plaintiff’ and the “undue consumption of time” outweighed “any potential probative effect of the evidence.”
 
 [4]
 
 The judge advised Jelinek, “that applies whether it’s direct evidence or presentation by way of cross-examination of the witnesses. I think that we get into a lot of side issues; side issues which are very time consuming and which are either irrelevant or borderline relevance.” The judge said a number of Jelinek’s questions that morning had clearly violated the
 
 in limine
 
 orders. Jelinek expressed his disagreement.
 

 At the end of the second day of testimony, the judge considered a motion by Trans-Action seeking a curative statement to the jury, an order imposing “Prospective Sanctions” against Jelinek for “Each Successive Violation of Court Orders,” and sanctions for prior violations of court orders. The judge was reluctant to give another curative statement to the jury, but added he might have to “if we get these continual objections.” The judge rejected Trans-Action’s request for automatic sanctions on each sustained objection. However, the judge warned Jelinek that “what you’re doing is contemptuous and that you are inviting all of the sanctions of contempt orders against you.” The judge said he was not as concerned with the “affront to me” as with “a
 
 *359
 
 repeated attempt to get in material which the Court has ruled is not relevant or not proper for various reasons.”
 

 The judge then referred to the minute order’s requirement of an offer of proof outside the jury’s presence before Jelinek impeached witnesses for bias using evidence precluded by
 
 in limine
 
 orders 9 and 21. The judge noted that certain of Jelinek’s questions had violated
 
 in limine
 
 order No. 4 (precluding evidence relating to breach of the covenant of good faith and fair dealing), “and also various motions which dealt with the prior litigation and prior difficulties between the parties.” The judge told Jelinek these were wilfull and contemptuous violations of court orders. “I don’t like to hold attorneys in contempt, and I seldom do it. But here there’s an issue of trying to get things in front of the jury after the Court, after rather lengthy arguments, has made its rulings. If those rulings are wrong they have to be tested somewhere else, but once the Court has made those rulings counsel is compelled to abide by them.”
 

 Jelinek said he found it “incomprehensible” that his questions violated the
 
 in limine
 
 orders, and pointed out the requirement of making an offer of proof outside the jury’s presence applied only to evidence covered by orders 9 and 21. Myron Moskovitz, cocounsel for Sulliger, also argued at some length that Jelinek had not violated the
 
 in limine
 
 orders, contending “Mr. Jelinek is bound by the words, not by some general flavor of them.” The judge insisted Jelinek had violated the
 
 in limine
 
 orders, and asked if Jelinek wanted to wait until the end of trial for a contempt hearing with his counsel present. Jelinek said that was fine. The judge then proceeded, over Jelinek’s objection, to find him in contempt and rule that an appropriate sanction under section 177.5 was a $1,500 fine payable to the county, “but the imposition of that fine is deferred until such time as Mr. Jelinek has counsel. And at that time if there is a motion to reconsider I’ll consider it.” The judge added, “there will be additional sanctions if there are additional violations,” and asked Trans-Action to prepare a written order citing the
 
 in limine
 
 motions and conforming with the requirements for contempt orders.
 

 During a break during Jelinek’s closing argument, Trans-Action moved for a mistrial based on his references to irrelevant matters and violations of the
 
 in limine
 
 orders barring argument relating to unclean hands and breach of the covenant of good faith and fair dealing. The judge denied the motion without prejudice. The jury returned a verdict finding Firmaterr had failed to comply with its obligation under the lease to operate a restaurant, but the breach was immaterial. Trans-Action renewed its motion for a mistrial. The judge granted the motion, citing Jelinek’s “repeated and flagrant violations” of the
 
 in limine
 
 orders.
 

 
 *360
 
 3.
 
 The Sanctions Proceedings
 

 About six weeks after ordering the mistrial, the trial judge granted Jelinek’s motion for reconsideration of the contempt sanction imposed during trial, vacating the contempt order and the $1,500 fine “upon the ground that asking questions may constitute advocacy.”
 
 [5]
 
 Meanwhile, however, TransAction had filed a posttrial motion for $153,938.53 in attorney’s fees and costs as sanctions under rule 227, attaching a compendium of 146 alleged violations of the
 
 in limine
 
 orders by Jelinek. In response, Jelinek argued (1) rule 227 is not a legal basis for attorney fee awards as sanctions without independent statutory authority, and does not provide adequate procedural safeguards; (2) he did not violate any
 
 in limine
 
 orders; (3) if he did violate any orders, he had good cause for doing so; and (4) the fees requested by Trans-Action were excessive.
 

 In a declaration attached to his points and authorities, Jelinek disclaimed any intent to be disrespectful to the court or to violate any orders. He explained why he did not believe he had violated the
 
 in limine
 
 rulings on a number of occasions mentioned by the judge when the mistrial was granted. He stated: “I sincerely regret that the court believes that I may have wilfully violated its orders and I again apologize to the court for any actions by me that have led the court to that belief.”
 

 At the hearing on the sanctions motion, the judge rejected Jelinek’s excuses, saying “I don’t believe that’s reasonable or a fair interpretation of what happened.” The judge commented that despite the rulings of the law and motion department on Firmaterr’s equitable defenses, and despite the
 
 in limine
 
 rulings, Jelinek had persisted in trying the case on the theory “that Trans-Action was the monster devouring poor, hapless defendant and . . . the tactic was to throw as much mud as possible ... at the plaintiff in an aim for jury nullification.” When Jelinek’s counsel argued the
 
 in limine
 
 orders did not preclude Jelinek’s questions at trial, the judge responded: “Except that we had been over all these things in the
 
 in limine
 
 motions. The various things Mr. Jelinek wanted to bring out were discussed. And I think that the rulings have to be read in light of the discussion that took place during two days of discussions of
 
 in limine
 
 motions.”
 

 Finally, the judge indicated he would impose sanctions, but not in the amount requested by Trans-Action. The judge added, “this is something I do with heavy heart. I do not like imposing [an] attorney’s fees award of this
 
 *361
 
 magnitude on an attorney, but at some point the court has to say, Wait a minute, we have rules, and those rules have to be complied with. And there is a large element of unfairness to the other side to be forced to gear up and start the whole process all over again and go through a retrial which was totally unnecessary if the Court’s rules have been complied with in the first place.”
 

 The judge subsequently ordered Jelinek to pay $50,000 in sanctions to compensate Trans-Action for its reasonable costs and fees incurred as a result of Jelinek’s misconduct during trial.
 

 Discussion
 

 1.
 
 Rule 227
 

 Among other contentions, Jelinek argues the trial judge had no power to sanction him under rule 227, because when it adopted the rule the Judicial Council meant only to consolidate existing statutory authority, not to provide independent authority for sanctions.
 
 [6]
 
 Jelinek claims no statute authorizes the fee award against him. Certainly, no statutory authority was invoked either in Trans-Action’s posttrial sanctions motion or in the order imposing sanctions. Jelinek refers us to a 1984 Judicial Council staff report from the Advisory Committee on Calendar and Case Flow Management, which states: “The proposed rule attempts to consolidate, for all areas of case management, the sanction enforcing authority of the court for noncompliance with both statewide and local rules (see Code Civ. Proc., sections 128.5, 177.5, and 575.1).”
 
 [7]
 
 We find the rule’s plain meaning inconsistent with this stated purpose, which raises a fundamental constitutional issue regarding the council’s rulemaking authority.
 

 As adopted effective January 1, 1985, rule 227 provided: “The failure of any person to comply with these rules, local rules, or order of the court, unless good cause is shown, or failure to participate in good faith in any conference those rules or an order of the court may require, is an unlawful interference with the proceedings of the court. The court may order the person at fault to pay the opposing party’s reasonable expenses and counsel fees and to reimburse or make payment to the county, may order an
 
 *362
 
 appropriate change in the calendar status of the action, in addition to any other sanction permitted by law.”
 
 [8]
 

 We agree with Jelinek’s view of the intent behind the rule. A November 1993 report from the Civil and Small Claims Standing Advisory Committee also reflects the committee’s belief that rule 227 simply incorporates the sanctions authority conferred by statute. In a discussion concerning both rule 227 and rule 526, an identical provision for municipal courts, the committee cited the 1984 staff report characterizing rule 227 as a consolidation of statutory sanctioning authority, and added the following comments: “After review of the case Baug[u]ess [sic] v. Paine (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], which holds that absent specific statutory authority courts may not impose attorney fees as a sanction, the committee reviewed all statutory sanction authority for municipal and justice courts and concluded that the council has the authority to adopt proposed rule 526, the counterpart to superior court rule 227, for municipal and justice courts. [Citations.] [<]D Although the rule may be redundant, as suggested by the State Bar committees, consolidation of the courts’ sanction authority in one location is helpful to the courts and will alert counsel to the court’s authority. []D Rule 227 as currently written does not consolidate all sanction authority, however, such as the power to dismiss an action, strike pleadings, or enter a default judgment. [Citations.]” After recommending the amendment quoted in footnote 8,
 
 ante,
 
 the report adds: “The addition of the phrase ‘for failure to comply with local rules’ limits the sanction authority to that authorized by statute. This addresses a concern expressed by the Los Angeles County Bar Association.”
 

 Nevertheless, rule 227 as written is not limited to sanctions authorized by statute. The specification that rule 227 sanctions apply
 
 in addition
 
 to any other authorized sanctions clearly indicates no independent statutory authority is required. Sanctions statutes are mentioned only in the limited context of local rule violations. Altering rule 227 to conform with the Judicial Council’s unexpressed intent, as Jelinek urges us to do, would violate the first rule of statutory construction. (See
 
 Cabrera
 
 v.
 
 Plager
 
 (1987)
 
 *363
 
 195 Cal.App.3d 606, 611 [241 Cal.Rptr. 731] [rules of court are subject to principles of statutory construction].) If there is no ambiguity in the language of a provision, we must presume the provision means what it says; we will not resort to more remote indicia of underlying intent.
 
 (Lennane
 
 v.
 
 Franchise Tax Bd.
 
 (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976];
 
 Muething
 
 v.
 
 Franchise Tax Bd.
 
 (1997) 52 Cal.App.4th 275, 281 [60 Cal.Rptr.2d 525];
 
 Service Employees Internat. Union
 
 v.
 
 City of Redwood City
 
 (1995) 32 Cal.App.4th 53, 58 [38 Cal.Rptr.2d 86];
 
 City of Sacramento
 
 v.
 
 Public Employees’ Retirement System
 
 (1994) 22 Cal.App.4th 786, 793-795 [27 Cal.Rptr.2d 545].) Courts, counsel, and litigants are entitled to rely on the plain language of a rule of court, without having to explore the files of the Judicial Council to verify the rule’s meaning. (See
 
 Halbert’s Lumber, Inc.
 
 v.
 
 Lucky Stores, Inc.
 
 (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298] [“Judges, lawyers and laypeople all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent.”].)
 

 The broad sweep of rule 227 brings into question the Judicial Council’s rulemaking authority, which is especially limited in areas where the Legislature has been active. Jelinek briefly raised this line of argument in his points and authorities below, but did not renew it in his appellate briefs. Whether rule 227 is inconsistent with statute is a question of law involving no disputed facts, and raises important policy issues concerning trial courts’ authority to impose sanctions.
 
 [9]
 
 Therefore, we asked the parties for further briefing under Government Code section 68081. (See
 
 Waller
 
 v.
 
 Truck Ins. Exchange, Inc.
 
 (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619];
 
 Wong
 
 v.
 
 Di Grazia
 
 (1963) 60 Cal.2d 525, 532, fn. 9 [35 Cal.Rptr. 241, 386 P.2d 817];
 
 In re Marriage of Moschetta
 
 (1994) 25 Cal.App.4th 1218, 1227-1228 [30 Cal.Rptr.2d 893];
 
 Myers Building Industries, Ltd.
 
 v.
 
 Interface Technology, Inc.
 
 (1993) 13 Cal.App.4th 949, 957, fn. 3 [17 Cal.Rptr.2d 242].)
 

 2.
 
 The Constitutional Requirement of Consistency With Statute
 

 The Judicial Council is empowered to “adopt rules for court administration, practice, and procedure, not inconsistent with statute.” (Cal. Const., art.
 
 *364
 
 VI, § 6; see 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 204, pp. 272-273.) It is settled that in order to comply with the constitutional requirement of consistency with statutory law, a rule of court must not conflict with the statutory intent.
 
 (People
 
 v.
 
 Hall
 
 (1994) 8 Cal.4th 950, 960-963 [35 Cal.Rptr.2d 432, 883 P.2d 974];
 
 In re Robin M.
 
 (1978) 21 Cal.3d 337, 346 [146 Cal.Rptr. 352, 579 P.2d 1];
 
 California Court Reporters Assn.
 
 v.
 
 Judicial Council of California
 
 (1995) 39 Cal.App.4th 15, 25-26 [46 Cal.Rptr.2d 44];
 
 Iverson
 
 v.
 
 Superior Court
 
 (1985) 167 Cal.App.3d 544, 546-548 [213 Cal.Rptr. 399]; see also
 
 Cox
 
 v.
 
 Superior Court
 
 (1993) 19 Cal.App.4th 1046, 1050-1051 [23 Cal.Rptr.2d 751] [applying similar provision of Gov. Code, § 68070 authorizing courts to make local rules “not inconsistent with law”].)
 

 A rule of court may go beyond the provisions of a related statute so long as it reasonably furthers the statutory purpose.
 
 (Butterfield
 
 v.
 
 Butterfield
 
 (1934) 1 Cal.2d 227, 228 [34 P.2d 145] [rule requiring points and authorities in support of motion for change of venue];
 
 Mann
 
 v.
 
 Cracchiolo
 
 (1985) 38 Cal.3d 18, 29 [210 Cal.Rptr. 762, 694 P.2d 1134] [rule limiting time to file opposition to summary judgment motion].) However, if a statute even implicitly or inferentially reflects a legislative choice to require a particular procedure, a rule of court may not deviate from that procedure.
 
 (People
 
 v.
 
 Hall, supra,
 
 8 Cal.4th at pp. 961-962 [rule limiting aggravating factors to be considered in imposing sentence enhancements conflicted with Legislature’s evident intent to apply full range of factors];
 
 California Court Reporters Assn.
 
 v.
 
 Judicial Council of California, supra,
 
 39 Cal.App.4th at pp. 26-31 [rule permitting electronic recording of superior court proceedings conflicted with implicit legislative intent that such proceedings be stenographically recorded];
 
 Cox
 
 v.
 
 Superior Court, supra, 19
 
 Cal.App.4th at pp. 1050-1051 [local rule requiring notice of motion to suppress at preliminary hearing conflicted with statute raising “reasonable inference” that no prior notice is required].)
 

 Specific statutory authorization may enable the Judicial Council to adopt rules that supersede contrary statutes. (See, e.g., Fam. Code § 211; rule 1206;
 
 In re Marriage of McKim
 
 (1972) 6 Cal.3d 673, 678, fn. 4 [100 Cal.Rptr. 140, 493 P.2d 868].) Even in that circumstance, however, the Legislature may later enact a statute that effectively amends the Rules of Court. The Legislature’s primary constitutional authority to provide the rules governing judicial procedure necessarily controls over the Judicial Council’s secondary rulemaking authority.
 
 (Stockton Theatres, Inc.
 
 v.
 
 Palermo
 
 (1956) 47 Cal.2d 469, 476-477 [304 P.2d 7] [construing former §§ 961 and 1035, and former rule 26(c), regarding costs on appeal]; 2 Witkin, Cal. Procedure,
 
 *365
 

 supra,
 
 Courts, § 186, p. 251.) Thus, the constitutional requirement that Rules of Court be consistent with statute includes subsequently enacted statutes as well as those in effect when a rule is adopted.
 

 When possible, Rules of Court are construed in a manner that maintains their consistency with statutory or constitutional requirements. (See 2 Witkin, Cal. Procedure,
 
 supra,
 
 Courts, § 205, pp. 273-274.) Rule 227 was so construed in
 
 Caldwell
 
 v.
 
 Samuels Jewelers
 
 (1990) 222 Cal.App.3d 970 [272 Cal.Rptr. 126]. There, the trial court ordered counsel for both parties to pay fines of $2,500 to the court clerk under section 177.5 and rule 227, as sanctions for the attorneys’ conduct in a discovery dispute. (222 Cal.App.3d at pp. 973-975.) The Court of Appeal reversed and remanded, on two grounds. First, the order did not state the circumstances giving rise to the sanctions. Such a statement is required by section 177.5 but not by rule 227, and county counsel contended the order was valid under rule 227 alone. The court rejected this argument because specification of the grounds for a sanction is an element of due process. But the court avoided invalidating the rule by reading into it “a requirement that the person being sanctioned be told what conduct or circumstances justified the imposition of sanctions.” (222 Cal.App.3d at p. 978.) Second, the court noted the amount of the sanctions exceeded the $1,500 limit provided in section 177.5. To achieve consistency between the rule and the statute, the court held that “whenever sanctions are awarded to the county pursuant to rule 227
 
 as a penalty for violating a court order,
 
 the maximum permissible sanction shall be $1,500, i.e., the amount set forth in section 177.5.” (222 Cal.App.3d at p. 979, italics in original.)
 

 In this case, the $50,000 fee award to Trans-Action does not conflict with statutory requirements as obviously as the sanctions award in
 
 Caldwell
 
 v.
 
 Samuels Jewelers, supra,
 
 222 Cal.App.3d 970, because the award is to a party and no statute sets a monetary cap on such awards. Nevertheless, Jelinek’s conduct was potentially sanctionable under a number of statutes. We must examine those statutes to determine whether Jelinek’s sanction under rule 227 is consistent with the Legislature’s intent regarding fee awards as penalties for disobedience of a court order. First, however, we consider the California Supreme Court decision that spurred legislative activity on the subject of sanctions for attorney misconduct.
 

 3.
 
 Bauguess
 
 v.
 
 Paine
 

 In
 
 Bauguess
 
 v.
 
 Paine
 
 (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], the trial court imposed a fee award against counsel as a sanction for
 
 *366
 
 causing a mistrial, as did the judge in our case. The ground for the penalty in
 
 Bauguess
 
 was counsel’s examination of certain exhibits admitted into evidence on which the court had allowed the jurors to make notes.
 
 [10]
 
 The court held counsel in contempt in addition to ordering him to pay the opposing party $700 in attorney’s fees, but no contempt penalty was imposed because the court considered the fee award an adequate alternative sanction.
 
 (Id.
 
 at pp. 632-634.) The Supreme Court noted that both traditional American practice and statute require litigants to pay their own attorney’s fees absent an agreement or statute providing otherwise.
 
 (Id.
 
 at p. 634, citing § 1021.) Neither agreement nor statute supported the fee award in
 
 Bauguess,
 
 but the respondent contended the award was proper under the court’s inherent power. The Supreme Court disagreed, noting the case did not involve the limited situations in which fee awards are justified by the courts’ inherent equitable powers (such as where counsel preserves a common fund, or acts as a “ ‘private attorney general’ ”). (22 Cal.3d at pp. 635-637.)
 

 Furthermore, the
 
 Bauguess
 
 court decided the award could not be sustained under the trial court’s inherent supervisory power. “It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute. If an attorney’s conduct is disruptive of court processes or disrespectful of the court itself, there is ample power to punish the misconduct as contempt. Moreover, unlike the power advocated by respondent, a court’s inherent power to punish contempt has been tempered by legislative enactment to provide procedural safeguards. [Citations.] . . . Absent such safeguards, serious due process problems would result were trial courts to use their inherent power, in lieu of the contempt power, to punish misconduct by awarding attorney’s fees to an opposing party or counsel.” (22 Cal.3d at pp. 637-638.) The Supreme Court also observed that among other procedural irregularities, the trial court had imposed a monetary sanction exceeding the fine permitted by statute for contempt of court, even though the court regarded the sanction as an alternative to a contempt penalty. (Id. at p. 639.)
 

 The maximum monetary penalty for contempt under section 1218 is now $1,000, plus fees and costs incurred in the contempt proceeding; at the time of
 
 Bauguess,
 
 the maximum was a $500 fine. Clearly, the $50,000 sanction imposed on Jelinek was more disproportionate to the available contempt penalties than was the $700 sanction in
 
 Bauguess.
 
 Here, as in
 
 Bauguess,
 
 the
 
 *367
 
 trial judge considered the award of fees and costs an alternative sanction to contempt. It was not until after trial that the judge vacated his contempt finding against Jelinek and Trans-Action sought sanctions under rule 227.
 

 The Legislature enacted a variety of provisions governing sanctions in the wake of the
 
 Bauguess
 
 decision. The terms of the sanctions statutes clearly reflect the Legislature’s intent to impose “procedural safeguards” on judicial sanctioning authority, consistent with the cautious approach taken in
 
 Bauguess.
 
 Rule 227 fails to conform with that legislative intent.
 

 4.
 
 Sections 128.5 and 128.7
 

 In 1981 the Legislature enacted section 128.5, declaring its intent was “to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in Baug[u]ess v. Paine (1978) 22 Cal. 3d 626.” (Stats. 1981, ch. 762, § 2, p. 2968.) The initial version of the statute stated: “Every trial court shall have the power to order a party or the party’s attorney, or both, to pay any reasonable expenses, including attorney’s fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith.” (Stats. 1981, ch. 762, § 1, p. 2968.) Section 128.5, subdivision (b) required notice and an opportunity to be heard before the imposition of sanctions, and an order reciting in detail the conduct justifying the sanctions.
 
 (Ibid.)
 

 In 1985, the same year rule 227 took effect, Legislature amended subdivision (a) of section 128.5 to read: “Every trial court may order a party, the party’s attorney, or both to pay any reasonable expenses, including attorney’s fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.” At the same time, two new subdivisions were added. Subdivision (b) stated: “For purposes of this section: [^Q (1) ‘Actions or tactics’ include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. The mere filing of a complaint without service thereof on an opposing party does not constitute ‘actions or tactics’ for purposes of this section, [f] (2) ‘Frivolous’ means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.” Subdivision (d) (redesignated subdivision (e) after a 1990 amendment not relevant to our discussion) provided: “The liability imposed by this section is in addition to any other liability imposed by law for acts or omissions within the purview of this section.” (Stats. 1985, ch. 296, § 1, p. 1335.)
 

 
 *368
 
 In 1994 the Legislature reconsidered section 128.5 and decided to adopt the approach of rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.) (hereafter federal rule 11). California’s counterpart to federal rule 11 is section 128.7, under which sanctions are tied to pleadings and other filings, which must be signed. (§ 128.7, subd. (a).) The signer is deemed to certify that the filed papers are not being presented primarily for an improper purpose, are warranted by existing law (or a nonfrivolous argument for a change in the law), and are supported by evidence or likely to be so supported after further investigation (or, in the case of denials, are reasonably based on a lack of information or belief). (§ 128.7, subd. (b); compare federal rule 11(b), under which an improper purpose need not be “primary”.) The court may impose sanctions for violations of section 128.7, subdivision (b) after notice and an opportunity to respond, but in determining the sanctions the court must consider whether the party seeking sanctions has exercised due diligence. (§128.7, subd. (c); compare federal rule 11(c), omitting any due diligence requirement.)
 

 The party sought to be sanctioned has a 30-day grace period after service of the sanctions motion to withdraw the challenged filing. “If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney’s fees incurred in presenting or opposing the motion.” (§ 128.7, subd. (c)(1); compare federal rule 11(c)(1), providing a 21-day grace period.) “A sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney’s fees and other expenses incurred as a direct result of the violation.” (§ 128.7, subd. (d).)
 

 Section 128.7 is clearly more restrictive than section 128.5 in certain respects. Its focus is on deterring the offending party, not compensating the offended party. Whereas section 128.5 broadly authorizes the recovery of attorney’s fees incurred as a result of an opponent’s bad faith misconduct, section 128.7 directs judges to limit a fee award to “some or all” of the fees “incurred as a direct result of the violation,” and then only if the award is “warranted for effective deterrence.” The grace period provided by section 128.7 has no counterpart in section 128.5. Nor does section 128.7 specify that the sanctions it authorizes apply in addition to any other liability imposed by law, as does section 128.5. It is also significant that section 128.7 sanctions can arise only from pleadings or other filings. Therefore,
 
 *369
 
 Jelinek’s oral misconduct during trial was not covered by section 128.7, as it might have been under section 128.5 if Trans-Action were able to establish the requisite bad faith.
 

 The Legislature did not repeal section 128.5, but instead limited its scope by adding the following underlined text to section 128.5, subdivision (b)(1): “ ‘Actions or tactics’ include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31. 1994.” Section 128.7 correspondingly applies “to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in such a matter.” (§ 128.7, subd. (i).) A sunset provision in section 128.7 provides: “This section shall remain in effect only until January 1, 1999, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1,1999, deletes or extends that date.” (§ 128.7, subd. (j).) A section identical to former section 128.5 will take effect on January 1,1999; unless the repeal date of section 128.7 is deleted or extended. (§ 128.6.) The Legislature directed the Judicial Council to provide a report at the beginning of 1998 on sanctions motions filed under section 128.7 and the results of those motions. (Stats. 1994, ch. 1062, § 6.)
 

 Because section 128.7 has no application to tactics not embodied in papers presented to the court, Trans-Action never requested sanctions under that statute. In its midtrial sanctions motion, Trans-Action cited section 128.5 but requested only a $1,500 fine payable to the county, consistent with section 177.5 (as well as prospective sanctions of $100, payable to the county, for future violations of the
 
 in limine
 
 orders). In its posttrial sanctions motion under rule 227, Trans-Action conceded that section 128.5 has been “suspended” while section 128.7 is in effect. This view of section 128.5 is reflected in the Legislative Counsel’s Digest accompanying the chaptered bill that enacted the new sanctions statutes. (Legis. Counsel’s Dig., Assem. Bill No. 3594 (1993-1994 Reg. Sess.) [section 128.5 sanctions are limited “to actions or tactics that arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994”]; but see
 
 People
 
 v.
 
 Cruz
 
 (1996) 13 Cal.4th 764, 780 [55 Cal.Rptr.2d 117, 919 P.2d 731] [Legislative Counsel’s Digest and reports by legislative staff “do not have the force of law, for the interpretation of law is a judicial function”].) Commentators have also reported that section 128.5 applies only in actions initiated before January 1, 1995. (See, e.g., 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 239, p. 280; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) *][ 9:1010, p. 9 (M)-4.) And the same interpretation
 
 *370
 
 has been noted, in dicta, by California appellate courts.
 
 (Garcia
 
 v.
 
 McCutchen
 
 (1997) 16 Cal.4th 469, 481 fn. 8 [66 Cal.Rptr.2d 319, 940 P.2d 906];
 
 Crowley
 
 v.
 
 Katleman
 
 (1994) 8 Cal.4th 666, 690, fn. 13 [34 Cal.Rptr.2d 386, 881 P.2d 1083];
 
 Murphy
 
 v.
 
 Yale Materials Handling Corp.
 
 (1997) 54 Cal.App.4th 619, 623 [62 Cal.Rptr.2d 865].)
 
 [11]
 

 5.
 
 Section 177.5
 

 In 1982, a year after enacting section 128.5, the Legislature added section 177.5, which grants judicial officers the power to impose sanctions of up to $1,500 for violation of lawful court orders without substantial justification, but specifies that “[t]his power shall not apply to advocacy of counsel before the court.” The legislative history of section 177.5 was examined in some detail in
 
 People
 
 v.
 
 Tabb
 
 (1991) 228 Cal.App.3d 1300 [279 Cal.Rptr. 480], which held the statute applicable in criminal as well as civil proceedings. The
 
 Tabb
 
 court noted section 177.5 was proposed because section 128.5 did not permit counties to recoup wasted court costs, and was not useful in cases where both parties were dilatory or where one party’s counsel was paid by the county. (228 Cal.App.3d at p. 1309-1310.) As noted above, the judge in this case first considered fining Jelinek under section 177.5, but changed his mind because Jelinek’s improper questioning of witnesses might have been considered “advocacy of counsel before the court.”
 

 6.
 
 Section 1218
 

 Section 1218, subdivision (a) provides that a person found guilty of contempt may be fined or imprisoned for up to five days, or both. In 1983, the Legislature increased the fine from $500 to $1,000. (Stats. 1983, ch. 1092, § 72, p. 3984.) In 1994, the Legislature amended section 1218, subdivision (a) to provide: “In addition, a person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney’s fees and costs incurred by this party in connection with the contempt proceeding.” (Stats. 1994, ch. 368, § 1.) Although this bill passed in 1994, it did not become effective because a later enacted amendment to section 1218 prevailed. (Stats. 1994, ch. 1269, § 3.3; see Gov. Code, § 9605 [effect of subsequent enactments].) The Legislature reenacted the amendment permitting a fee award in 1995, and it was in effect in 1996 when this case was
 
 *371
 
 tried. (Stats. 1995, ch. 576, § 5.5.) In its supplemental brief, Trans-Action fails to address this provision of section 1218, subdivision (a), but it is crucial to our analysis, because it clearly reflects the Legislature’s intent regarding the award of attorney’s fees as sanctions for violating a court order.
 

 7.
 
 Rule 227 Is Invalid Insofar as It Permits Fee Awards Not Authorized by Statute
 

 Our review of the statutory authority governing sanctions, and particularly attorney’s fees as sanctions, demonstrates the Legislature’s care in establishing limits or conditions on judicial sanctioning authority. When the Legislature broadly authorized courts to award fees expended as a result of an adversary’s tactics, it required findings that the tactics were in bad faith and were either frivolous or intended to cause unnecessary delay. (§ 128.5.) Section 128.7, governing frivolous filings, pointedly limits fee awards as sanctions to the amount necessary for effective deterrence, and provides a grace period to allow a party to avoid sanctions. (§ 128.7, subds. (c) and (d).) When the Legislature permitted courts to impose sanctions payable to the county for violating court orders, it limited the amount to $1,500, required the violation to have been without good cause or substantial justification, and specified that sanctions could not be imposed for counsel’s advocacy in court. (§ 177.5.) Furthermore, when the Legislature enacted fee sanctions as additional punishment for contemptuous violation of a court order, it did not allow the recovery of all fees resulting from the violation, but only those incurred in connection with the contempt proceeding itself. (§ 1218, subd. (a).) Rule 227 includes no such restrictions, except that the violation of a court order must have been without good cause. It broadly authorizes unlimited monetary sanctions, including fee awards, “in addition to any other sanction permitted by law.” We conclude rule 227 conflicts with the legislative intent manifested in the sanctions statutes, to the extent the rule purports to allow sanctions inconsistent with the limits and conditions provided in an applicable statute.
 

 The judge in this case did not lack statutory authority to curb Jelinek’s trial tactics. Contempt is the primary and long-established remedy available to judges for punishing those who violate court orders.
 
 [12]
 
 The authority of courts to compel obedience to their orders by means of contempt sanctions
 

 
 *372
 
 has been repeatedly codified. (§§ 128; 177; 178; 1209, subd. (a)(5); 1218; Pen. Code, § 166, subd. (a)(4) [wilful disobedience of lawful court order is misdemeanor].) Moreover, case law abundantly confirms the courts’ power to hold attorneys in contempt for the kind of misconduct displayed in this case—repeatedly and deliberately attempting to introduce matters ruled irrelevant in an attempt to gain an unfair advantage at trial. (See, e.g.,
 
 Pounders
 
 v.
 
 Watson
 
 (1997) _ U.S. _ [117 S.Ct. 2359, 2362-2363, 138 L.Ed.2d 976] [even references that are not repeated may support contempt finding];
 
 Fisher
 
 v.
 
 Pace
 
 (1949) 336 U.S. 155, 161-162 [69 S.Ct. 425, 428, 93 L.Ed. 569];
 
 Charbonneau
 
 v.
 
 Superior Court
 
 (1974) 42 Cal.App.3d 505, 511, 514 [116 Cal.Rptr. 153];
 
 Hawk
 
 v.
 
 Superior Court
 
 (1974) 42 Cal.App.3d 108, 126-129 [116 Cal.Rptr. 713];
 
 DeGeorge
 
 v.
 
 Superior Court
 
 (1974) 40 Cal.App.3d 305, 314 [114 Cal.Rptr. 860];
 
 Zal
 
 v.
 
 Steppe
 
 (9th Cir. 1992) 968 F.2d 924, 925 [contempt based on violation of
 
 in limine
 
 orders; rejecting counsel’s claims based on constitutional rights of free speech, trial by jury, effective assistance of counsel, and due process];
 
 Hallinan
 
 v.
 
 United States
 
 (9th Cir. 1950) 182 F.2d 880, 886-887.) The judge need not have waited until after trial to impose sanctions on Jelinek. Because the misconduct occurred in the judge’s presence, summary punishment would have been proper under section 1211, after appropriate warnings. (See
 
 Pounders
 
 v.
 
 Watson,
 
 supra, _ U.S. at p. __ [117 S.Ct. at. p. 2363] [summary punishment did not violate due process];
 
 Hawk
 
 v.
 
 Superior Court, supra,
 
 42 Cal.App.3d at pp. 115, 133.)
 

 Furthermore, counsel who violate court orders may face discipline beyond judicial sanctions. Wilful disobedience of a court order pertaining to counsel’s professional duties is cause for disbarment or suspension. (Bus. & Prof. Code, § 6103.) A judge may notify the State Bar if it appears a final contempt order involves grounds warranting disciplinary proceedings. (Bus. & Prof. Code, § 6086.7, subd. (a).) And a judge must notify the State Bar anytime counsel is ordered to pay sanctions of $1,000 or more, except
 
 *373
 
 sanctions for failure to make discovery. (Bus. & Prof. Code, § 6086.7, subd. (c).) Section 6086.7 requires the State Bar to investigate such reports to determine if disciplinary action is appropriate. We are confident our holding will not result in any dearth of authority for punishing attorneys who violate court orders.
 

 Disposition
 

 The sanctions order is reversed. The parties shall bear their own costs on appeal.
 

 Phelan, P. J., and Corrigan, J., concurred.
 

 Respondents’ petition for review by the Supreme Court was denied April 1, 1998. George, C. J., and Baxter, J., did not participate therein.
 

 [1]
 

 Further references to rules are to the California Rules of Court unless otherwise specified. Rule 227 is the only rule in part 4 of the Civil Trial Court Management Rules, entitled “Sanctions.” Rule 526, a replica of rule 227, governs sanctions in municipal courts.
 

 [2]
 

 Further statutory references are to the Code of Civil Procedure unless otherwise specified.
 

 [3]
 

 Section 177.5 provides in relevant part: “A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the county in which the judicial officer is located, for any violation of a lawful court order by a person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court.”
 

 [4]
 

 Evidence Code section 352 provides: “The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.”
 

 [5]
 

 The reference to advocacy relates to the restriction stated in section 177.5, that the power to impose monetary sanctions “shall not apply to advocacy of counsel before the court.”
 

 [6]
 

 Our holding on the limited scope of rule 227 makes it unnecessary for us to consider Jelinek’s other arguments.
 

 [7]
 

 Section 575.1 authorizes the promulgation of local court rules.
 

 [8]
 

 In 1993, rule 227 was amended to add a clause that is irrelevant to the sanctions in this case. Just before the final “in addition to any other sanction” clause the Judicial Council inserted “and for failure to comply with local rules may impose sanctions authorized under section 575.2 of the Code of Civil Procedure and under section 68608(b) of the Government Code.” Section 575.2 authorizes local court rules to include sanctions for failure to comply with local rule requirements. Government Code section 68608, subdivision (b) is a provision of the Trial Court Delay Reduction Act. It states: “Judges shall have all the powers to impose sanctions authorized by law. . . . Judges are encouraged to impose sanctions to achieve the purposes” of the act.
 
 (Ibid.)
 

 [9]
 

 We realize there is little practical difference in this case between a holding that rule 227 is invalid to the extent it conflicts with the sanctions statutes, and a holding that the rule must be construed according to the Judicial Council’s intent to consolidate statutory sanctioning authority. Either way, those interested in determining the rule’s reach must pursue their research beyond its plain terms. However, there is a significant difference in principle between divining an intent that deviates from the terms of an unambiguous rule and examining the scope of Judicial Council rulemaking authority in a particular area. The former is not a proper appellate court function and the latter is. In any event, the optimal solution to the problems caused by rule 227’s overbreadth is amendment of the rule by the Judicial Council to incorporate the statutory terms and conditions for sanctions awards.
 

 [10]
 

 The Supreme Court noted that counsel was entitled to inspect items in evidence; the error causing the mistrial was committed by the trial court when it allowed the jury to make notes on items that would become part of the evidence.
 
 (Bauguess
 
 v.
 
 Paine, supra,
 
 22 Cal.3d at p. 636, fn. 6.)
 

 [11]
 

 Because the issue is not presented in this case, we do not address the question whether the 1994 legislation amending section 128.5 and adding section 128.7 can reasonably be interpreted to permit concurrent application of the two statutes, with section 128.7 governing filings and section 128.5 other bad faith litigation tactics.
 

 [12]
 

 Interestingly, rule 227 itself reflects the statutory terminology of contempt by stating that failure to obey a court order “is an unlawful interference with the proceedings of the court.” Among the “acts or omissions” identified as contempts by section 1209 is “[a]ny other unlawful interference with the process or proceedings of a court.” (§ 1209, subd. (a)(8).) The connection between the contempt statute and a predecessor of rule 227 was noted in
 
 Cantillon
 
 
 *372
 
 v.
 
 Superior Court
 
 (1957) 150 Cal.App.2d 184 [309 P.2d 890]. Former rule 8.9 of the Rules for the Superior Courts provided: “ ‘Any failure of an attorney to prepare for, appear at, or participate in, a pre-trial conference, unless good cause is shown for any such failure, is an unlawful interference with the proceedings of the court; and in addition the court may impose costs, actual expenses, counsel fees, or any or all thereof, arising therefrom.’ ” (150 Cal.App.2d at p. 188, fn. 2.) The
 
 Cantillon
 
 court rejected a contention that former rule 8.9 was an unconstitutional encroachment on the Legislature’s power by the Judicial Council. The court noted section 1209, subdivision (a)(8) is a catchall provision following a series of more specifically described offenses against judicial authority. Former rule 8.9 merely “delineate[d] certain omissions by an attorney as constituting an unlawful interference with the proceedings of the court in a pre-trial conference and [did] not attempt to define any new or distinct act of contempt.” (150 Cal.App.2d at p. 188.) The scope of punishment under former rule 8.9 was not at issue in
 
 Cantillon,
 
 because the trial court sanctioned the petitioner by holding him in contempt. (150 Cal.App.2d at p. 186.)