[No. S011535. Mar. 18, 1991.]

BETSEY WARREN LEBBOS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Betsey Warren Lebbos, in pro. per., for Petitioner.

Gary Michael Coutin, Reginald Shinn, Raymond Dunn, John Rakus, John B. Gunn, Barry D. Ammon, Harold L. Rauch, G. G. Baumen, Ronald A. Clark and Roger Bartels as Amici Curiae on behalf of Petitioner.

Diane C. Yu, Richard J. Zanassi and Jerome Fishkin for Respondent.

## OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (Review Department) that petitioner, Betsey Warren Lebbos, be disbarred from the practice of law in California. After considering the record and the arguments of petitioner and the State Bar, we conclude that the State Bar's recommendation is appropriate.[1]

### FACTS

Petitioner was admitted to the practice of law in California on July 18, 1975. She has no record of prior discipline.

The hearing panel in this disciplinary proceeding found petitioner culpable in nine counts of misconduct involving forty separate acts. The panel found that petitioner committed the following misconduct:

(1) She commingled funds belonging to client Robert Miller with her personal funds, in violation of former rule 8-101(A) of the State Bar Rules of Professional Conduct.[2] There was no misappropriation or intent to deceive.

(2) After failing to prevail at a contested hearing, she knowingly and with intent to deceive filed with the court and served on opposing counsel an altered copy of the court order she disagreed with, along with a motion for modification directed to the altered order, in violation of sections 6068, subdivision (d), 6103 and 6106 of the Business and Professions Code and former rule 7-105(1) of the State Bar Rules of Professional Conduct. The purported order not only contained substantive alterations, but also featured the forged signature of the court commissioner who had presided at the hearing.

(3) She wilfully and deceitfully concealed assets belonging to her from both court and counsel and gave false testimony in a deposition taken pursuant to an order of examination following a judgment against her in an action in which she was a party, in violation of Business and Professions Code sections 6068, subdivision (d), 6103 and 6106 and former rule 7-105(1) of the Rules of Professional Conduct.

---

[1] Petitioner's motion to disqualify the members of this court for cause is denied. (*Kaufman v. Court of Appeal* (1982) 31 Cal.3d 933, 939-940 [184 Cal.Rptr. 302, 647 P.2d 1081].)

[2] New Rules of Professional Conduct became operative on May 27, 1989.

(4) She made knowingly false statements in an effort to disqualify a judge,[3] and in the same case altered a stipulation sent to her by opposing counsel and filed it with the court without opposing counsel's (or the court's) knowledge or consent, and then lied to the State Bar in response to an inquiry about the matter, in violation of Business and Professions Code sections 6068, subdivision (d), 6103, 6106 and former rule 7-105(1) of the Rules of Professional Conduct.

(5) She persisted in appearing with clients before a judge who had recused himself from hearing any of her cases, and engaged in disruptive and offensive conduct in his courtroom, wilfully violating Business and Professions Code sections 6068, subdivisions (a), (b), (f), and (g), and 6103 and former rule 7-105(1) of the Rules of Professional Conduct.[4]

(6) During 1986 and 1987, petitioner wilfully, deceitfully and recklessly indulged in a series of offensive statements against judges, opposing counsel and others, in violation of Business and Professions Code sections 6068, subdivisions (b) and (f), 6103 and 6106.[5]

---

[3] In her declaration in support of the motion to disqualify, petitioner claimed that the judge had sent her client home and then made an ex parte order for attorney fees in favor of the opposing party. The judge denied that he had sent the client home.

[4] The judge testified that petitioner tried to embarrass him by remaining in his courtroom, knowing that her cases had to be reassigned to other judges. She would refuse to tell his clerk what case she was appearing on so that the clerk could pull the file for reassignment. She would also refuse to follow the bailiff's instruction to leave the courtroom.

[5] These comments range in gravity. Petitioner called a Santa Clara County court "dirty" and lacking in lawful procedure in a letter to a judge, questioned the judicial ability of the Santa Clara County bench in a disqualification motion, and in a bankruptcy petition accused opposing counsel of stealing her mail and a judge of making an illegal order. In a letter to a judge which she also circulated to her client and opposing counsel, she accused the judge of attempting to destroy children's lives and of engaging in irresponsible meddling "beyond any possible judicial jurisdiction, common sense, or human decency and respect for the people of this county." Another letter accused another judge of "playing politics" with children's lives and assisting opposing counsel in perpetrating a fraud on the court. In another letter circulated to local judges, the Commission on Judicial Performance, the State Bar, and others, petitioner accused a judge of nearly killing her client's daughter and of issuing fraudulent ex parte orders. In speaking to a judge's clerk, she referred to the judge as "swine." She made several unsubstantiated claims that judges had made improper ex parte orders. She was held in contempt for verbally attacking a judge and persistently arguing against his ruling. In motions, she declared that opposing counsel had been the victim of childhood abuse. She wrote a letter to a court commissioner in connection with litigation in which she was a party, accusing him of being involved in the worst scandal and criminal embezzlement imaginable, for which he should have criminal liability. In other personal litigation, she wrote letters accusing judges of gross bungling and criminal conduct and characterized four local judges as "the four stooges." In a letter to the presiding judge, she accused another judge of causing mass murder through his incompetence. In a disqualification motion, she characterized the local family law judges as the worst in history, repeating accusations about cover-ups and improper ex parte orders.

(7) From 1986 to 1988, petitioner made a number of false statements about judges, opposing counsel and others, in violation of Business and Professions Code sections 6068, subdivision (d), 6103 and 6106 and former rule 7-105(1) of the Rules of Professional Conduct. The hearing panel found that these statements were part of a "concerted assault by [petitioner] on the Santa Clara bench and bar."[6]

(8) Petitioner repeatedly made frivolous motions to disqualify judges of the Santa Clara County Superior Court, in violation of Business and Professions Code sections 6068, subdivisions (b), (c) and (g), 6103 and 6106 and former rules 2-110 and 7-105(1) of the Rules of Professional Conduct. She made repeated motions, without making an application for reconsideration as required by Code of Civil Procedure section 1008, subdivision (a), and she failed to disclose the prior rulings against her in subsequent motions, as required by Code of Civil Procedure, section 1008, subdivision (b). She also wrote offensive letters to judges, in the opinion of the hearing panel for the purpose of exasperating the judges so much that they would recuse themselves. The panel found: "[Petitioner's] constant barrage of calumny deceit and harassment has not only hampered the work of the Family Court; it has also made the operation of the entire justice system in Santa Clara County more burdensome. [Petitioner's] cases get special handling, and judges from other civil departments must accept assignments that normally would be heard by Family Law Court Judges . . . . And counsel and their clients have been repeatedly obliged to return for court hearings because of an overburdened court adding to both the cost and inconvenience of litigation."

(9) Finally, petitioner named an individual as a plaintiff in a lawsuit without the person's knowledge or consent, in violation of Business and Professions Code sections 6068, subdivision (d), and 6103 and former rule 7-105(1) of the Rules of Professional Conduct.

In recommending disbarment, the hearing panel found that petitioner had committed multiple acts of misconduct involving moral turpitude, re-

---

[6] Again, the falsehoods range in seriousness. She left a message on her answering machine stating that counsel she had opposed were being investigated by a grand jury for fraud in Santa Clara County divorce cases. She repeated the claim that the attorneys were subject to criminal and State Bar action in a letter sent to a judge presiding in one of her cases. In a letter she sent to a judge regarding his disqualification, she accused another judge of trying to bankrupt her out of spite. She accused a judge of awarding child custody without notice to the other party. In a writ petition in the Court of Appeal, she said the State Bar had decided not to bring charges against her regarding a particular act of misconduct, when in fact the reverse was true. She said a multiple killer would not have committed his crimes if a court commissioner had adopted an affidavit procedure she had recommended. She accused a judge of converting property belonging to the federal court. In a letter to the presiding judge of the Santa Clara County Superior Court, she lied about the existence of a federal court order "to turn over [her] monies to the Federal Court."

ferring to her various falsehoods and alterations of court documents. The hearing panel referred also to the pattern of misconduct and the number of separate incidents, as well as to the harm to the administration of justice caused by petitioner's attacks on the Santa Clara County judiciary and her attempts to recuse the entire family law bench. Finally, the hearing panel pointed to petitioner's failure to admit any wrongdoing and her persistent obstructionism during the State Bar proceedings. Petitioner presented no evidence in mitigation; in mitigation there was only the fact that petitioner had not previously been disciplined.

The Review Department adopted the findings of fact and conclusions of law of the hearing panel, and recommends that this court order petitioner disbarred.

## DISCUSSION

Petitioner does not dispute the factual findings of the hearing panel or Review Department. Rather, she denies the jurisdiction, and indeed the existence, of the State Bar; imputes improper motives to the State Bar for the disciplinary proceeding against her; and claims that her conduct was constitutionally protected or privileged.

In a passing aside in her general attack on the constitutionality of the State Bar Act (Bus. & Prof. Code, § 6000 et seq.), petitioner claims she is being disbarred for "political association, belief, speech or privileged conduct." Since she does not relate these claims in any way to the record before the State Bar, it is impossible to know precisely what she means.[7]

We take it that petitioner is suggesting, as she claimed before the hearing panel, that she is being punished for: (1) attempting to cure abuses in the Santa Clara County Superior Court; (2) attempting to protect her clients from incompetent judges; and (3) exercising her right of free speech in making the above attempts.

■ "Our duty is to examine the record, weigh the evidence, and make an independent assessment whether the review department's recommendations should be upheld. [Citation.] The burden is on petitioner to demonstrate that the review department's decision should not be followed [citation], but the charges against him must be supported by convincing proof and to a reasonable certainty [citation]." (*Young* v. *State Bar* (1990)

---

[7]She also claims that the disciplinary proceedings were part of a conspiracy to thwart a lawsuit which she is bringing against the State Bar. Of this we see absolutely no evidence. Her request that we take judicial notice of her many other lawsuits, and other matters completely foreign to this proceeding, is denied.

50 Cal.3d 1204, 1215-1216 [270 Cal.Rptr. 315, 791 P.2d 994]; see also Bus. & Prof. Code, § 6083, subd. (c); *Layton* v. *State Bar* (1990) 50 Cal.3d 889, 898 [268 Cal.Rptr. 845, 789 P.2d 1026].)

■ Putting aside petitioner's verbal and written attacks on the Santa Clara County judiciary, petitioner commingled client funds; served on counsel and filed with the court an altered copy of a court order, with intent to deceive; concealed assets from a judgment creditor; unilaterally altered and filed as genuine a stipulation; refused to abide by a court's order recusing itself and lied to a client with respect to that order; and named a person as a plaintiff in a lawsuit without the person's knowledge or consent. The acts of falsifying court documents and concealing her assets were acts of moral turpitude, and all these acts were a flagrant deviation from professional standards that cannot conceivably come under the protection of the First Amendment and the duty of vigorous advocacy. Such a rampant course of misconduct and deceit fully warrants disbarment.

Multiple acts of misconduct involving moral turpitude and dishonesty warrant disbarment. (See std. 2.3, Stds. for Atty. Sanctions for Prof. Misconduct, div. V, Rules Proc. of State Bar; compare *Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 739, 740 [187 Cal.Rptr. 30, 653 P.2d 321].) Petitioner's pattern of serious, recurrent misconduct is a factor in aggravation. (*Garlow* v. *State Bar* (1988) 44 Cal.3d 689, 711 [244 Cal.Rptr. 452, 749 P.2d 1307].) Further, unrestrained personal abuse and disruptive behavior characterized petitioner's conduct during the State Bar proceedings. (See *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11, fn. 18 [206 Cal.Rptr. 373, 686 P.2d 1177].) Failure to cooperate with the State Bar during disciplinary proceedings itself may support severe discipline. (*Middleton* v. *State Bar* (1990) 51 Cal.3d 548, 560 [273 Cal.Rptr. 321, 796 P.2d 1326].) It is evident that petitioner has no appreciation that her method of practicing law is totally at odds with the professional standards of this state. Disbarment is thus necessary to protect the public, preserve confidence in the profession, and maintain high professional standards. (*Ainsworth* v. *State Bar* (1988) 46 Cal.3d 1218, 1235 [252 Cal.Rptr. 267, 762 P.2d 431].)

Accordingly, we need not examine the fine points of whether counsel has the right to refer to a judge as "swine" and "asshole" when speaking to court personnel in the course of their duties, or delve into the interesting question whether petitioner indulged in a reckless, defamatory falsehood in programming her telephone answering machine to inform all callers that opposing counsel were subject to grand jury investigation for fraud or in communicating her view to a judge of the superior court that another judge "deliberately set out to bankrupt me out of spite." ■ We caution, however, that it is a violation of professional standards for counsel to indulge in

offensive and demeaning remarks about judges in a spirit of reckless disregard for the truth. (*Ramirez* v. *State Bar* (1980) 28 Cal.3d 402, 411 [169 Cal.Rptr. 206, 619 P.2d 399].)

Petitioner basically confines herself to attacking the jurisdiction of the State Bar to discipline her, and to alleging that the State Bar disciplinary proceedings are void because they violate the Sherman Antitrust Act (15 U.S.C. § 1 et seq.) and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.; hereafter RICO).

■ Petitioner's RICO claim is that she has evidence of " 'the state bar court' being a Federally-prohibited Racketeering Operation in this case and permitted by the state supreme court to prosecute in order to buy votes for its existence from bar politicians . . . ." She notes for example that Miller, the client whose funds she commingled, was active in supporting higher State Bar dues for lawyers. She suggests that the State Bar disciplined her "in order to buy Miller's influence with the local bar for it to continue to handle discipline and extort monies out of lawyers. Buying votes for money by prosecuting bar politicians' opponents is the selling of official influence, prohibited by the Federal Racketeering and Influenced [*sic*] Corrupt Organizations Act. Refusing to prosecute embezzlers in order to buy their votes is a racketeering operation. As such, 'the state bar court' is a Federally-prohibited racketeering organization such that any recommendation it makes is void as a product of their corruption and racketeering goals, purposes, and ends."

The record demonstrates that petitioner was disciplined for gross violation of professional standards. We see no persuasive evidence of any racketeering activity on the part of the State Bar in disciplining her. (See 18 U.S.C. § 1961(1) [defining racketeering as an act in violation of certain state and federal criminal laws]; 1 McCormack, RICO, Racketeer Influenced Corrupt Organizations, Civil and Criminal (1989) § 1.03, p. 1-3.) In any case, if petitioner were injured by a RICO violation, her remedy presumably would be a private cause of action for damages under that statute, brought in a superior court of this state or in the federal district court. (See 18 U.S.C. § 1964(c); *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 916 [221 Cal.Rptr. 575, 710 P.2d 375].) She provides no authority for the claim that a State Bar disciplinary proceeding is an appropriate forum for establishing a RICO violation, or for the claim that a RICO violation necessarily would void a State Bar disciplinary recommendation based on a practitioner's pattern of gross misconduct.

Petitioner also claims that the Sherman Antitrust Act "forbids state bar courts." Her argument is that "[a]s soon as a state bar claims to take rights

to work of their own competitors and opponents, this violates the Sherman Anti-Trust [*sic*] Act as being anti-competitive policies intended to monopolize the market of attorneys who are available and have the license to practice law." She continues: "As such, the state bar court is void as it is an anti-competitive, lawyer fixing mechanism to limit private competition by forcing all opponents and competitors to support the communism of the state bar trade group and its desire for totalitarian control."

■ The Sherman Antitrust Act is inapplicable to state action. (*Parker* v. *Brown* (1943) 317 U.S. 341, 350-351 [87 L.Ed. 315, 325-326, 63 S.Ct. 307].) It is an order of this court that will take away petitioner's "right to work" as an attorney. Our enforcement of disciplinary rules by suspending or disbarring an attorney is state action and, as such, is immune from Sherman Antitrust Act liability. (*Bates* v. *State Bar of Arizona* (1977) 433 U.S., 350, 360 [53 L.Ed.2d 810, 821, 97 S.Ct. 2691]; see also *Hoover* v. *Ronwin* (1984) 466 U.S. 558, 573 [80 L.Ed.2d 590, 602-603, 104 S.Ct. 1989].)

■ Petitioner's primary contention is that Business and Professions Code sections 6084, subdivision (a), 6086.5 and 6079.1, defining the function of the State Bar Court, are unconstitutional. Petitioner may not attack the current language of these sections, however, because her disciplinary proceeding did not occur under their authority. Rather, the disciplinary proceedings in her case were conducted pursuant to the State Bar Act as it existed prior to the amendments enacted by the 1988 Legislature. Thus, for example, we have no cause to address her claim that this court has no jurisdiction because section 6084, subdivision (a), as amended in 1988, provides that the decision or order of the State Bar Court is final and enforceable if no petition for review is filed in this court.[8]

Some of petitioner's rambling arguments seem to attack the validity of the State Bar Act as it existed before the 1988 amendments. She errs, however, in suggesting that the act constituted an unconstitutional delegation of judicial power to the State Bar. "We have described the bar as 'a public corporation created . . . as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.] In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court, which nonetheless retains its inherent judicial authority to disbar or suspend attorneys. [Citations.]" (*Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 557 [216 Cal.Rptr. 367, 702 P.2d 525]; see also *Keller* v. *State Bar of California*

---

[8] Petitioner claims to have filed no petition for review in this matter, though we have treated her pleadings as such.

(1990) 496 U.S. 1, __ [110 L.Ed.2d 1, 13, 110 S.Ct. 2228].) Thus the judicial power in disciplinary matters remains with this court, and was not delegated to the State Bar. For this reason, petitioner's various claims that the State Bar operates an invalid "private court" or "de facto court" using "untrained volunteers" must fail.

■ Petitioner's claim that discipline imposed by the integrated bar of this state is an unconstitutional violation of associational or free speech rights is meritless. The United States Supreme Court has held that with respect to claims of freedom of speech and association, there is "no valid constitutional objection to their compulsory dues being spent for activities connected with disciplining members of the bar . . . ." (*Keller* v. *State Bar of California, supra,* 496 U.S. at p. __ [110 L.Ed.2d at p. 15].) Although the high court has held that the expenditure of State Bar dues for political purposes not reasonably related to the state's interest in regulating the legal profession and improving the quality of legal services violates the First Amendment (*ibid.* [110 L.Ed.2d at p. 15]), this holding in no way undermines the disciplinary function of the State Bar.

Petitioner makes some reference to her free speech right to refer to a judge entering a public cafeteria as an "asshole." We note that the referee accorded her that important constitutional right, and excluded the comment from the evidence of her misconduct.

Petitioner also makes a number of due process arguments. ■ She claims that the use of state power to create a private membership group is a violation of due process. Her argument seems to be that it is not within the police power of the state to create an integrated bar to regulate admission to the bar or provide for the disciplining of attorneys, as such legislation is not in the public interest but is simply legislation for the private purposes of a special interest group. We long ago rejected this idea.

"Attorneys and counselors at law have long been known as 'officers of the court,' and as such they have for centuries been required to undergo certain courses of preparation and to assume certain solemn obligations relative to their training, character and conduct as such; and these not only with respect to their relation to the courts, but also with regard to their relation to the public at large. Thus it is that the profession and practice of the law, while in a limited sense a matter of private choice and concern in so far as it relates to its emoluments, is essentially and more largely a matter of public interest and concern, not only from the viewpoint of its relation to administration of civil and criminal law, but also from that of the contacts of its

membership with the constituent membership of society at large, whose interest it is to be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession. It is to be noted also that from the body of the legal profession it is required, by both the constitution and statutory law of this and most other states, the justices and judges of all courts of record and of certain other subordinate tribunals must be chosen. It is for each and all of these reasons that the membership, character and conduct of those entering and engaging in the legal profession have long been regarded as the proper subject of legislative regulation and control . . . ." (*State Bar of California* v. *Superior Court* (1929) 207 Cal. 323, 331 [278 P. 432]; see also *Johnson* v. *State Bar* (1935) 4 Cal.2d 744, 758 [52 P.2d 928].) It is now settled that the state has a legitimate interest in regulating the practice of law, and may do so by means of an integrated bar. (*Keller* v. *State Bar, supra,* 496 U.S. at p. __ [110 L.Ed.2d at p. 11].)

█ In reference to her own hearing, petitioner claims a denial of due process since the hearing panel recommended disbarment because she refused to violate her oath as an attorney to support the United States Constitution. On the contrary, the hearing panel recommended disbarment because of petitioner's egregious misconduct. Finally, she claims a due process violation because the referee was incompetent and because no screening process existed to determine the referee's competence to serve. Our examination of the record discloses that the referee performed creditably under extremely trying circumstances. Petitioner also complains that the referee refused to hear her attacks on the State Bar system and that he erred in making findings based on "totem pole hearsay," a recurrent term of art in petitioner's private lexicon. The referee actually allowed petitioner great latitude in voicing her attack on every aspect of the State Bar proceedings and, as we demonstrate, her attacks on the disciplinary system are meritless. Our independent review of the record assures us that overwhelming, competent evidence indicates that petitioner should be disbarred.

## DISPOSITION

It is ordered that petitioner Betsey Warren Lebbos be disbarred from the practice of law in the State of California and that her name be stricken from the roll of attorneys. It is further ordered that petitioner Betsey Warren Lebbos comply with rule 955 of the California Rules of Court, and that she perform the acts specified in subdivisions (a) and (c) of that rule within 30

and 40 days, respectively, after the effective date of this order. This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

Petitioner's application for a rehearing by the Supreme Court was denied May 16, 1991.