[No. A088787. First Dist., Div. Two. Jan. 12, 2001.]

TARA LEE BRYAN, Plaintiff and Appellant, v.
BANK OF AMERICA et al., Defendants and Respondents.

**COUNSEL**

James J. Braze and Gail Stimmel Braze for Plaintiff and Appellant.

Steefel, Levitt & Weiss, Lisa M. Carvalho, Stephen S. Mayne and James M. Grady for Defendant and Respondent Bank of America.

Law Offices of Howard R. Melamed and Robert W. Drane for Defendant and Respondent Clifford Egan.

Cesari, Werner & Moriarty and Charles P. Shea for Defendant and Respondent Robert I. Segbarth.

Lewis, D'Amato, Brisbois & Bisgaard and Frederick Bruce Legernes for Defendant and Respondent Michael Meleyco.

## OPINION

**KLINE, P. J.**—This appeal having previously been dismissed, appellant moves to recall the remittitur. Respondents not only oppose the motion but request the imposition of sanctions on appellant's counsel for factual misrepresentations made to the court. The request for sanctions raises the legal question whether an appellate court has inherent authority to impose sanctions in the form of attorney fees against an attorney for factual misrepresentations or the violation of court rules. We shall conclude that we have such authority and that its exercise is warranted in this case. We shall also deny appellant's motion to recall the remittitur.

### FACTS

According to Gail Braze, one of the attorneys engaged by appellant Tara Lee Bryan, the latter became delusional in June of 1999 while this case was pending in the trial court.[1] Two months later, after she stopped taking her medication, appellant disappeared.[2] At some point before she departed, and apparently while delusional, appellant told counsel to cease pursuing her case.

On August 13, 1999, the trial court granted summary judgment for respondents and three weeks later respondent bank's counsel sent notice of entry of judgment. On October 4, 1999, James Braze, Gail Braze's partner and cocounsel for appellant, signed and filed appellant's notice of appeal. Thereafter, Gail Braze signed and mailed appellant's notice of election to proceed under California Rules of Court, rule 5.1, and either Gail or James Braze filed appellant's docketing statement.

In December 1999, Gail Braze received telephone calls from various Sonoma County and Oregon peace officers concerning appellant. On December 5, Gail Braze traveled to Bodega Bay, where appellant had been

---

[1] This occurred upon remand after we issued an opinion (*Bryan v. Meleyco* (Oct. 14, 1997, A073403) [nonpub. opn.]), reversing an order sustaining a demurrer to the complaint, and vacating the judgment against appellant. The complaint alleged that the trustees of appellant's trust tortiously evicted her from her residence and unjustifiably had her placed in a community care facility. The causes of action alleged were breach of fiduciary duty, intentional infliction of emotional distress, false imprisonment, fraud, professional negligence, invasion of privacy, conspiracy, and, as to two defendants, wrongful eviction. Our earlier opinion concluded that, although appellant's first amended complaint was poorly drafted and organized, it was an abuse of discretion to dismiss it without leave to amend.

[2] In November 1999, a neighbor of appellant's confirmed to Gail Braze that appellant had been missing for three months.

located, but found her incoherent, delusional and paranoid. Gail Braze did not see her or speak with her again until September 26, 2000.

On February 4, 2000, James Braze filed a motion and declaration of good cause seeking an extension of time for filing appellant's opening brief until March 6, 2000. His declaration, which was made under penalty of perjury, stated that he had complied with rule 45(f) of the California Rules of Court, which required him to mail or otherwise deliver to his client a copy of his request for an extension of time. He checked the box saying his client knew of the request and did not object, *not* the box showing that his client could not be reached. The declaration also stated that opposing counsel could not be reached for a possible stipulation to extend time. We granted counsel's motion and extended time for filing appellant's opening brief.

On March 6, 2000, James Braze filed a nearly identical motion and declaration of good cause seeking a further extension of time, this time to April 5, 2000. The declaration, also made under penalty of perjury, repeated the statements that he had contacted his client and obtained her approval and that he had been unable to contact opposing counsel.

According to records maintained by our clerk's office, the next day opposing counsel telephoned this court, stating that respondents intended to oppose any extension. A week later, they filed opposition and a motion to dismiss the appeal, complaining that, among other things, appellant's counsel had not contacted them about either motion for an extension of time and had not served them with the first motion.

On March 21, 2000, we denied the second motion for an extension of time.

Two weeks later, Gail Braze sent an ex parte letter marked confidential, attempting to advise this court for the first time that appellant had disappeared the previous August, was confined to a mental hospital, and was incompetent to handle her affairs. Gail Braze asked that we stay the appeal process pending resolution of the issue of her client's competency and a possible conservatorship.

Shortly after receiving this letter, we dismissed the appeal on our own motion, denied as moot respondents' motion to dismiss, and directed our clerk to advise counsel the court was unwilling to accept her ex parte communication. The remittitur issued June 19, 2000.

On October 13, 2000, appellant filed a motion to recall the remittitur that issued upon our dismissal of the appeal. The motion was supported by Gail

Braze's declaration and the declarations of others concerning appellant's incompetence and civil commitment for treatment. According to Gail Braze, appellant is now taking medication and has expressed a desire to proceed with her appeal.

Respondents opposed the motion to recall the remittitur and requested sanctions of $1,200 in attorney fees for responding to the motion and an additional $1,200 for responding to the earlier motion to dismiss. They claim appellant's attorneys made several misrepresentations to this court in either the requests for extensions of time or the declaration in support of recalling the remittitur or both.

James Braze's initial written response includes a declaration explaining his conduct when confronted with an incompetent client who had instructed him and cocounsel to do nothing further on the case and then disappeared. He first asserts, without further explanation, that information about his client's conduct, condition and whereabouts were "confidential information which we had to keep secret." He then explains what he viewed as his three alternatives: "withdraw . . . dismiss the appeal . . . continue requesting continuances to file the opening brief until appellant regained her sanity and was able to re-establish contact with her attorneys." Without denying or explaining factual misrepresentations he made to the court when requesting extensions of time, he states that he and his cocounsel elected the third course of action and that "[t]he continuances to file the opening brief were required in order to preserve the client's interest, while at the same time maintaining the ultimate in attorney-client privilege."

After receiving James Braze's reply, we scheduled oral argument on the motion to recall the remittitur and ordered James Braze to show cause following that argument why we should not sanction him and/or hold him in contempt for the apparently false statements he made in his requests for extensions of time.

DISCUSSION

I.

*Recall of the Remittitur.*

■ "When the remittitur issues, the jurisdiction of the appellate court ceases, and that of the trial court attaches. Except where the issuance was a result of mistake, inadvertence or fraud . . . , it cannot be recalled for the purpose of modifying the judgment. [Citations.]" (9 Witkin, Cal. Procedure

(4th ed. 1997) Appeal, § 733, pp. 762-763.) "If the remittitur issues by inadvertence or mistake, or as a result of fraud or imposition practiced on the appellate court, the court has inherent power to *recall* it and thereby reassert its jurisdiction over the cause. This remedy, though described in procedural terms, is actually an exercise of an extraordinary substantive power. Correction of the clerk's clerical or other mistakes in the *remittitur* is a very minor aspect of the proceeding; its significant function is to permit the court to *set aside an erroneous judgment on appeal obtained by improper means.* In practical effect, therefore, ·the motion or petition to recall the remittitur may operate as a belated petition for rehearing on special grounds, without any time limitations. [Citations.]" (*Id.*, § 736, p. 765, italics in original.)

█ In effect, appellant's motion to recall the remittitur and reinstate the appeal appears to be based on her incompetence at the time the appeal was dismissed for failure to pursue it, and on the fact that she is now "back on her medication" and desires to "reopen her case."

Although Gail Braze, whose declaration supports the request to recall the remittitur, has presented evidence showing that her client was incompetent when the appeal was dismissed, she has completely failed to justify counsel's failure to either file a timely opening brief or explain to the court, if she could, why appellant's mental state interfered with the preparation or filing of the brief. If, as appears to have been the case, counsel felt unauthorized to continue to proceed on behalf of an incompetent client no longer able or willing to pursue her cause, it was incumbent upon them to so advise this court and seek to defer proceedings until a conservator could be appointed, not to· silently allow the appeal to be dismissed.

Gail Braze's mistaken belief she could obtain a deferment by advising this court ex parte about her client's condition (with no real explanation why revelation of this information would jeopardize Ms. Bryan's rights) was unreasonable. If there were a reason for secrecy, and we are aware of none, she could have asked us to defer briefing in an application accompanied by a sealed statement setting forth reasons and sought leave to file the statement under seal. (See *Champion v. Superior Court* (1988) 201 Cal.App.3d 777, 785-790 [247 Cal.Rptr. 624].) Respondents claim secrecy was unnecessary, as appellant's mental condition was revealed by her at deposition and was known by all parties throughout the course of this litigation. In any case, even if a sealed communication could somehow be justified, it should have been submitted to the court before the brief was due, not long after time expired and an extension of time denied. Counsel for appellant have not satisfactorily explained either their need for secrecy or their tardiness.

We deny the motion to recall the remittitur primarily because appellant has presented no cognizable ground upon which the extraordinary remedy

she seeks could properly be allowed. (See 9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 738-740, pp. 767-770.) Furthermore, long or unexcused delay in seeking recall of a remittitur itself justifies the denial of relief. "Action must be taken by the moving party *as soon as he learns of the facts upon which the motion is based.*" (*Talbot v. Fire etc. Pension Bd.* (1942) 51 Cal.App.2d 193, 194 [124 P.2d 352], italics added; *Gutelius v. General Electric Co.* (1940) 39 Cal.App.2d 292, 294 [102 P.2d 1108].) The information provided in support of the motion to recall could and, as we have already indicated, should have been provided many months ago in support of appellant's motions for extensions of time. (*Davis v. Basalt Rock Co.* (1952) 114 Cal.App.2d 300, 310 [250 P.2d 254]; *Chin Ott Wong v. Title Ins. & Trust Co.* (1949) 91 Cal.App.2d 1, 3 [204 P.2d 387].)[3]

## II.

### *Sanctions.*

We have no reason to question the veracity of Gail Braze's detailed factual statements regarding the history of counsel's relationship with appellant, the latter's mental condition, and counsel's ignorance of her whereabouts during a period of time.

 James Braze's representations to the court are another matter. His repeated statement that he was unable to notify opposing counsel of his requests for extensions of time are contradicted by numerous counsel for the several respondents, all of whom state that they never received notice of such requests. The conflict between Gail Braze's statement that appellant was missing for a period of time and James Braze's claims that he contacted appellant during that same period and obtained her permission to seek extensions of time is even more troubling.

Because James Braze's factual representations cannot be squared with those of his cocounsel and appeared false, we issued an order requiring him to show cause why he should not be sanctioned and/or held in contempt. In

---

[3]Although we do not do so, because the relevant facts are not entirely clear, the motion might also be denied on the ground that counsel had no authority to initiate this appeal in the first place. The notice of appeal was signed by counsel, not appellant. "Because an attorney cannot appeal without the client's consent, a notice of appeal shown to have been signed by an unauthorized attorney is ineffectual in preserving the right to appeal. [Citations.]" (*In re Alma B.* (1994) 21 Cal.App.4th 1037, 1043 [26 Cal.Rptr.2d 592].) Gail Braze's declaration that before appellant disappeared, and while this matter was still before the trial court, she said she no longer wished to pursue the case, casts doubt on whether counsel had authority to sign the notice of appeal.

response, he filed a declaration stating that the requests for extension of time were prepared "on a rush basis" by a paralegal he thought familiar with the procedures for obtaining a continuance and who he believed had attempted to notify opposing counsel but was unable to do so. He states that his staff "has no specific recollection of having called [opposing counsel] or not but would not intentionally falsify the document." As to the statement under penalty of perjury that he had contacted appellant and obtained her consent to seek an extension of time, James Braze asserts that "the duties to protect my client's interest and maintain the attorney/client privilege were at time at odds with the requirement to fill out a form request for continuance." We reject these evasive explanations.

An attorney who himself falsely represents under penalty of perjury that he notified counsel or tried but was unable to do so cannot foist off the responsibility on a paralegal. Nor can we accept the proposition that James Braze's duty to his client relieved him of the responsibility to tell the court the truth,. particularly where the representation was made under penalty of perjury. To begin with, there was no conflict between counsel's duties to his client and the court. If counsel had forthrightly acknowledged his inability to contact his client to obtain her consent, and explained the reasons, either openly or in a sealed statement, after notifying opposing counsel, appropriate relief would almost certainly have been granted. ■ In any case, rule 5-200 of the Rules of Professional Conduct promulgated by the State Bar provide that "[i]n presenting a matter to a tribunal," a member of the bar "(A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; [¶] (B) Shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law; . . ." This fundamental duty of counsel to be truthful, which is also imposed by statute (Bus. & Prof. Code, § 6068, subd. (d)), has been assiduously enforced by the courts. (See, e.g., *Maltaman v. State Bar* (1987) 43 Cal.3d 924, 957-958 [239 Cal.Rptr. 687, 741 P.2d 185]; *Eschwig v. State Bar* (1969) 1 Cal.3d 8, 18 [81 Cal.Rptr. 352, 459 P.2d 904, 35 A.L.R.3d 662]; *Datig v. Dove Books, Inc.* (1999) 73 Cal.App.4th 964, 980 [87 Cal.Rptr.2d 719].) Misrepresentations to a court are not justified by the duty of vigorous advocacy. (*Lebbos v. State Bar* (1991) 53 Cal.3d 37, 45 [278 Cal.Rptr. 845, 806 P.2d 317].)

■ The misrepresentations made by James Braze were consequential. Though among the least celebrated functions of appellate courts, the processing of a wide range of motions, applications and other requests for relief during the pendency of an appeal is an important aspect of the appellate

process.[4] Some of the most frequent requests, such as the routine applications for an extension of time to file a brief that were made here, require a declaration by counsel containing specific facts establishing good cause for the relief sought. (See, e.g., Cal. Rules of Court, rule 45.5(b).) The presiding justices who rule on such motions are obliged to assume the honesty and accuracy of such declarations, which are commonly submitted by officers of the court who are alone apprised of the relevant circumstances. Dishonest or inexcusably inaccurate factual representations by counsel are not only ethically objectionable but interfere with the judicial responsibility to ensure "that appellate business is conducted expeditiously and public confidence in efficient administration of justice at the appellate level is maintained." (Cal. Rules of Court, rule 45.5(a).)

Our order to show cause identified contempt and sanctions as two possible consequences for counsel's misrepresentations. Having considered the matter, we conclude that sanctions in the form of attorney fees is more appropriate to the circumstances than exercise of our contempt power. Because the misrepresentation of "specific facts" alleged to establish good cause for a requested extension of time constitutes an unreasonable infraction of rule 45.5(b) of the California Rules of Court, we may impose on the offending attorney "such penalties, including withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require." (Cal. Rules of Court, rule 26(a)(2).) ■ As stated in *Jones v. Superior Court* (1994) 26 Cal.App.4th 92 [31 Cal.Rptr.2d 264], "[e]ven if an appeal is neither frivolous nor filed solely for delay, we have independent authority under rule 26(a) of the California Rules of Court to sanction a party who 'has been guilty of any . . . unreasonable infraction of the rules . . . as the circumstances of the case and the discouragement of like conduct in the future may require.' " (*Id.* at p. 96, fn. omitted; accord, *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 884-885 [271 Cal.Rptr. 513] [filing of brief which contains no citations to record and relies on unpublished opinion warrants sanctions "to deter similar violations of the court rules" even though appeal not frivolous].)

■ Exercise of our inherent authority to impose sanctions in this case does not conflict with the doctrine announced by our Supreme Court in *Bauguess v. Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942] (*Bauguess*). *Bauguess* holds that a trial court may not rely on its inherent power to punish misconduct by imposing sanctions in the form of attorney

---

[4]The range and function of the many motions, applications and formal and informal requests for relief that may be filed are discussed in Eisenberg et al., California Practice Guide: Civil Appeals and Writs (The Rutter Group 2000) paragraph 5:1 et seq., page 5-1 et seq. (rev. #1, 1996).

fees because the Legislature has established a statutory scheme for such sanctions. In that case, the trial court sanctioned counsel $700 as compensation for the attorney fees incurred by the other side, because his conduct precipitated a mistrial. Although, at a later hearing, the court also found the offending attorney in contempt, it imposed no penalty for the contempt. The attorney did not challenge the finding he was in contempt but appealed imposition of the sanction.

The *Bauguess* court first concluded that no statute authorized an award of attorney fees as a sanction for this particular conduct. The court then considered whether either the trial court's equitable power or its supervisory or administrative power provided a basis for the award. A court's equitable powers will sometimes justify an award of attorney fees under the common fund or the private attorney general theory, the court concluded, but it cautioned against expanding nonstatutory bases for fee awards. After an extensive analysis, the court also rejected basing an attorney fee award upon the court's inherent supervisory powers, which were codified in section 128 of the Code of Civil Procedure.[5] (*Bauguess, supra,* 22 Cal.3d at pp. 635-639.)

As stated by the high court, it is "unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute." (*Bauguess, supra,* 22 Cal.3d at p. 637.) The court noted that the trial court had ample power to punish attorney misconduct as contempt, a power legislatively tempered to provide procedural safeguards, and expressed concern that "use of courts' inherent power to punish misconduct by awarding attorney's fees [might] imperil the independence of the bar and thereby undermine the adversary system." (*Id.* at p. 638.)[6] Although the *Bauguess* opinion is expansive in certain respects, its holding is rather

---

[5]Code of Civil Procedure section 128 provides in pertinent part: "(a) Every court shall have the power to do all the following: [¶] (1) To preserve and enforce order in its immediate presence. [¶] (2) To enforce order in the proceedings before it . . . . [¶] (3) To provide for the orderly conduct of proceedings before it, or its officers. [¶] (4) To compel obedience to its judgments, orders, and process . . . . [¶] (5) To control in furtherance of justice, the conduct of . . . all . . . persons in any manner connected with a judicial proceeding . . . ." All further statutory references in this opinion are to the Code of Civil Procedure.

[6]This reasoning overlooks the fact that subjecting counsel to civil contempt proceedings, which are criminal in nature (*Raiden v. Superior Court* (1949) 34 Cal.2d 83 [206 P.2d 1081]) and therefore procedurally demanding, would be far too difficult and draconian a means of punishing many forms of misconduct, as it would be in this case. If a court concludes that use of the contempt power is the only way in which it can punish counsel for misconduct, it will often be loath to punish an act worthy only of a lesser penalty, though it may well deserve some punishment.

It is also noteworthy that the United States Supreme Court does not appear to share the view expressed in *Bauguess* that sanctions in the form of attorney fees might "imperil the independence of the bar and thereby undermine the adversary system." (*Baugess, supra,* 22 Cal.3d at p. 638.) In *Roadway Exp., Inc. v. Piper* (1980) 447 U.S. 752, 765 [100 S.Ct. 2455,

narrow: "[T]his court holds that the award of attorney's fees to respondents following a mistrial exceeded the proper limits of the trial court's inherent power." (*Bauguess,* at p. 639, fn. omitted.)

In *Yarnell & Associates v. Superior Court* (1980) 106 Cal.App.3d 918 [165 Cal.Rptr. 421] (*Yarnell*), Division Three of this court examined *Bauguess*'s analysis and concluded that its impact was wider than the holding suggests. In *Yarnell,* the trial court sanctioned a litigant $250, not specifically as attorney fees, for a frivolous motion to quash service of process. The court examined *Bauguess*'s disapproval of *Santandrea v. Siltec Corp.* (1976) 56 Cal.App.3d 525 [128 Cal.Rptr. 629], and its limitation of *Fairfield v. Superior Court* (1966) 246 Cal.App.2d 113 [54 Cal.Rptr. 721], and concluded *Bauguess* banned more than merely nonstatutory sanctions denominated "attorney's fees." The *Yarnell* court concluded that by disapproving *Santandrea,* a decision that did not suggest that the sanctions awarded under section 128 were for *attorney fees, Bauguess* had barred other forms of nonstatutory or inherent powers sanctions. (*Yarnell, supra,* 106 Cal.App.3d at pp. 922-923.)

Shortly after *Yarnell* was decided, the Legislature enacted section 128.5, expressly authorizing certain sanctions *Bauguess* had found "not presently authorized." (Stats. 1981, ch. 762, § 2, p. 2968.) As originally enacted, the measure provided: "Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith." The statute required notice and an opportunity to be heard and directed the court to recite in the sanction order the conduct justifying the sanction. (*Id.* at § 1, p. 2968.)

If section 128.5's broad sanction authority were still in force, attorney fees would be an obviously available form of sanction. However, after enacting section 128.5 to fill the void created by *Bauguess,* the Legislature abruptly adopted the different approach to sanctions used by federal courts, thereby creating some confusion. Section 128.5, the broad sanction statute, is now

2463-2464, 65 L.Ed.2d 488], the high court upheld the inherent power of federal courts to assess attorney fees against attorneys who failed to comply with discovery orders. Later, in *Chambers v. NASCO, Inc.* (1991) 501 U.S. 32 [111 S.Ct. 2123, 115 L.Ed.2d 27], it extended the inherent power of the federal judiciary "to police itself" by upholding a trial court's imposition of attorney fees and related expenses on a party who engaged in bad faith conduct, stating that this "inherent power extends to a full range of litigation abuses." (*Id.* at p. 46 [111 S.Ct. at p. 2134].)

limited to actions filed before December 31, 1994, and has been temporarily replaced by section 128.7, which if not extended will expire on January 1, 2003.

Section 128.7 is modeled on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.) (*Trans-Action Commercial Investors, Ltd. v. Jelinek* (1997) 60 Cal.App.4th 352, 368 [70 Cal.Rptr.2d 449]) and covers "[e]very pleading, petition, written notice of motion or other similar paper." Each must be signed by an attorney of record. By presenting such a document, the attorney is deemed to be certifying that it is being presented for a proper purpose, the claims are warranted, and the factual allegations have evidentiary support. (§ 128.7, subd. (b).) The attorney may be sanctioned, but not without being first given a safe harbor—30-day notice and an opportunity to withdraw or appropriately correct the document. (§ 128.7, subd. (c); *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126 [87 Cal.Rptr.2d 594].)

The only statutes other than section 128.7 that arguably pertain to the imposition of sanctions at the appellate level are sections 177.5 and 907. Section 177.5 permits up to $1,500 in sanctions for "any violation of a lawful court order," but does not authorize fees for violations of court rules or other misconduct. Section 907, the only sanction statute specific to appellate procedures, permits sanctions for frivolous appeals but does not cover any other conduct. Thus, if section 128.7 applied at the appellate level appellate courts would, under the rationale of *Bauguess* have no inherent authority to impose sanctions in the form of attorney fees, and could impose such a penalty only in the circumstances contemplated by the statute.

We do not believe the Legislature intended section 128.7 to apply to appellate filings or to in any way limit the inherent authority of appellate courts. For one thing, the sorts of conduct to which section 128.7 seems chiefly directed are pleadings and motions, such as discovery requests, "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" (§ 128.7, subd. (b)(1)), or pleadings unsupported by evidence or unlikely "to have evidentiary support after a reasonable opportunity for further investigation or discovery." (§ 128.7, subd. (b)(2) & (3).) Discovery is not, of course, conducted at the appellate level, and evidence relating to the merits of a case is rarely introduced at that stage. More importantly, section 128.7 was modeled on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), which applies only to trial courts. (Fed. Rules Civ.Proc., rule 11, 28 U.S.C.; *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 391 [110 S.Ct. 2447, 2453, 110 L.Ed.2d 359]; *In re Grand Jury Proceedings Relative to Perl* (8th Cir. 1988) 838 F.2d 304, 309; *In re Kelly* (7th Cir. 1986) 808 F.2d 549, 551.)

Considering that section 128.7 was based on a federal rule that applied only to trial courts and replaced a statute that also applied only to trial courts, there is no reason to believe the Legislature intended the new statute to apply to the courts of appeal and the Supreme Court.[7] Because the Legislature has not by statute defined the circumstances in which appellate courts may penalize the misconduct of counsel through the imposition of sanctions in the form of attorney fees, *Bauguess* presents no bar to the exercise of that power by such courts. Although the scant case law on the subject is not dispositive, we believe it is consistent with our analysis.

Two recent decisions by Division Three of this court implicitly recognize that, while the Legislature has circumscribed the power of trial courts to sanction counsel, it has not done so with respect to appellate courts, which therefore have more leeway to impose such sanctions in appropriate circumstances. In *Trans-Action Commercial Investors, Ltd. v. Jelinek, supra,* 60 Cal.App.4th 352, the court addressed California Rules of Court, rule 227, which pertains to the award of sanctions in the superior courts. Rule 227 states that the sanctions it authorizes, which include an order directing a person who violated rules of court or an order of the court to pay the opposing party's reasonable costs and attorney fees, may be "in addition to any other sanction permitted by law." The *Trans-Action* court discussed *Bauguess* and sections 128.5, 128.7 and 177.5, and found the Judicial Council's rulemaking authority "especially limited" in this area due to the legislative prescriptives. The court concluded that the Judicial Council exceeded its authority when it adopted rule 227, extending sanction authority *of trial courts* to conduct not covered by statute. However, subsequently, in *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 28-37 [96 Cal.Rptr.2d 553] (*Pierotti*), Division Three itself imposed sanctions on an appellant and his attorney on two grounds: first, because counsel unreasonably violated court rules and, second, because the appeal was frivolous. Sanctions due to the frivolousness of the appeal were based upon section 907 and rule 26(a)(2) of the Rules of Court, but sanctions for the violation of court rules was authorized only by rule 26(a)(2), not by any statute. The offending conduct in *Pierotti* was violation "with abandon" of rules requiring citations to the record in briefs (rule 15(a)) and confining statements to matters in the record

---

[7]Our holding that section 128.7 does not apply to appellate proceedings does not mean the statute may never be relevant at the appellate level. Federal courts of appeal have recognized that although rule 11 of Federal Rules of Civil Procedure (28 U.S.C.) is not an appellate rule, "its requirements help to define conduct becoming a member of the bar" (*In re Kelly, supra,* 808 F.2d at p. 551), and have used rule 11 to "provide guidance in interpreting the rules that do control [appellate] proceedings." (*Hill v. Norfolk & Western Ry. Co.* (7th Cir. 1987) 814 F.2d 1192, 1200; see *Mortell v. Mortell Co.* (7th Cir. 1989) 887 F.2d 1322, 1328.) In appropriate circumstances, section 128.7 may similarly be employed as a guideline in determining whether sanctions are warranted.

on appeal (rule 13). In the *Pierotti* court's view, the appellant's opening brief made "a mockery of those rules." (*Pierotti*, at pp. 29-30.) For these violations and because the appeal was frivolous, *Pierotti* imposed $26,000 in sanctions in the form of an award to opposing parties and $6,000 in sanctions to the clerk of this court, amounts measured in part by the cost of defending and processing the appeal. (*Id.* at pp. 33-37.)

The different results reached in *Trans-Action Commercial Investors* and *Pierotti* can be reconciled only on the ground that section 128.7 is inapplicable to appellate courts. Because the Legislature has not prescribed the circumstances in which an appellate court may impose sanctions for attorney misconduct, the imposition of such sanctions in the form of attorney fees, which is authorized by California Rules of Court, rule 26(a)(2), does not conflict with *Bauguess.* This conclusion is consistent not just with the case law but also with the view of one of the few commentators to address the question, who has suggested that sanctions may be imposed "based on the appellate courts' inherent supervisory powers." (Eisenberg, *Sanctions on Appeal: A Survey and a Proposal for Computation Guidelines* (1985) 20 U.S.F. L.Rev. 13, 28 and fn. 105, citing *Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 147-148 [74 Cal.Rptr. 285, 449 P.2d 221]; *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 812-813 [31 Cal.Rptr. 316, 382 P.2d 356]; *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 825 [279 P.2d 35]; and *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119 [210 Cal.Rptr. 109].)

As noted, respondents have requested sanctions of $1,200 in attorney fees for responding to the motion to recall the remittitur and an additional $1,200 for preparation of their earlier motion to dismiss, which became moot after we dismissed the appeal on our own motion but was necessary to call our attention to James Braze's false statements that he was unable to contact opposing counsel. The opposition to the motion to recall also first brought to our attention the conflict between Gail Braze's declaration and James Braze's previous statements. Respondents should be compensated for costs, including attorney fees, incurred in these endeavors. We believe the amounts sought by respondents—which are exceedingly modest (cf. *Pierotti, supra,* 81 Cal.App.4th at p. 33)—are needed not just to compensate respondents but to discourage like conduct in the future. (*Id.* at p. 34; Cal. Rules of Court, rule 26(a)(2).)

## III.

### *Disposition.*

For the foregoing reasons, the motion to recall the remittitur is denied. Sanctions are awarded against James Braze, who shall pay respondents

$2,400 to compensate them for attorney fees incurred in connection with their opposition to the motion to recall the remittitur and their earlier motion to dismiss this appeal.

Respondents are also awarded costs on appeal.

Haerle, J., and Ruvolo, J., concurred.